UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-142(1) (DSD/KMM)

UNITED STATES OF AMERICA,

              Plaintiff,              **PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

    v.

MARK ALLEN MILLER,

              Defendant.

The United States of America and defendant MARK ALLEN MILLER (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b) and 78ff. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, the defendant admits the



1

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From at least in or about 2017 through in or about 2019, in the State and District of Minnesota, and elsewhere, defendant Mark Allen Miller did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Sections 78j(b) and 78ff.

More specifically, defendant Miller participated in scheme to hijack and assume control over dormant public shell companies and use that control to fraudulently manipulate the price of the company stock so that the conspirators could profit from the sale of stock at fraudulently inflated and "pumped up" prices.

As part of the scheme, Miller and his co-conspirators identified dormant public shell companies—that is, publicly traded companies without active operations that have stopped filing their required Securities and Exchange Commission (SEC) and

secretary of state filings. These dormant public shell companies traded publicly on the over-the-counter (OTC) stock market, generally for fractions of a penny per share. Miller and his co-conspirators then bought stock in the dormant public shell companies at low prices in the OTC market. They were able to obtain hundreds of thousands or even millions of shares because the stocks traded at only a fraction of a penny per share.

After buying stock in the dormant public shell companies, Miller and his co-conspirators hijacked and took control over the companies by creating and filing fake resignation letters and board minutes purporting to announce the resignation of the prior corporate officers and the appointment of one or more of the conspirators as new officers and board members. Miller used these fake documents to gain access to and control over the companies' accounts with the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system, which allowed them to make public filings on behalf of the hijacked companies.

Miller used his control over the hijacked shell companies to issue fraudulent press releases and public filings designed to fraudulently inflate and "pump up" the price of the hijacked companies' stock.

Finally, Miller and his co-conspirators sold or "dumped" their stock at the fraudulently inflated and pumped-up stock prices to unsuspecting investors.

As part of his conspiracy, Miller hijacked a number of public shell companies, including Bell Buckle Holdings Inc. (OTC: BLLB), Digitiliti Inc. (OTC: DIGI),

Encompass Holdings Inc. (OTC: ECMH), and Utilicraft Aerospace Industries Inc. (OTC: UITA).

3.     **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4.     **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.     **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.     **Statutory Penalties**. The defendant understands that Count One of the Indictment (conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b) and 78ff) is a felony offense that carries the following statutory penalties:

      a.     a maximum of 5 years in prison;

      b.     a supervised release term of not more than 3 years;

      c.     a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

      d.     restitution as agreed to by the parties in this agreement; and

      e.     a mandatory special assessment of $100.

7.     **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

      a.     Base Offense Level. The parties agree that the base offense level is 6. U.S.S.G. § 2B1.1(a)(2).

      b.     Specific Offense Characteristics. The parties agree that the offense level should be increased by 10 levels because the loss was

more than $150,000 but less than $250,000. U.S.S.G. § 2B1.1(b)(1)(F). The parties agree that the offense level should be increased 2 levels because the offense involved sophisticated means. U.S.S.G. § 2B1.1(b)(10)(C). The parties agree that the offense level should be increased by 4 levels because the offense involved a violation of securities law and, at the time of the offense, the defendant was an officer or director of a publicly traded company. U.S.S.G. § 2B1.1(b)(19)(A)(i). The parties agree that no other specific offense characteristics apply.

c.   Chapter 3 Adjustments. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.   Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based

on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.   Guidelines Range. If the adjusted offense level is 19, and the criminal history category is I, the Sentencing Guidelines range is 30 to 37 months of imprisonment.

g.   Fine Range. If the adjusted offense level is 19, the Sentencing Guidelines fine range is $10,000 to $100,000. U.S.S.G. § 5E1.2(c)(3).

8.   **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the

parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.     **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.     **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12.     **Restitution Agreement**. The parties agree that the Mandatory Victim Restitution Act does not apply because, as set forth in 18 U.S.C. § 3663A(c)(3)(b), determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

13.     **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to

8

the securities fraud scheme charged in Count One of the Indictment. The defendant also agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(8), any real or personal property used or intended to be used to commit, facilitate, or promote the commission of the securities fraud scheme charged in Count One of the Indictment, and any property constituting, derived from, or traceable to the gross proceeds the defendant obtained directly or indirectly as a result of that offense.

The defendant consents to entry of a money judgment forfeiture in the amount of $38,292 and agrees that the amount of proceeds he obtained, directly or indirectly, as a result of the securities fraud scheme equals or exceeds this amount. The United States reserves its right to forfeit substitute assets and additional directly forfeitable property.

The defendant waives all statutory and constitutional defenses to the forfeitures described herein and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeitures on any grounds.

14.     **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered

by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15.   **Venue Waiver**. Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

16.   **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 41 months of imprisonment, and an appeal by the government of the substantive reasonableness of a term of imprisonment below 33 months of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17.    **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

18.    **Complete Agreement**. The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any

agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

W. ANDERS FOLK
Acting United States Attorney

Date: 10-14-2021

BY: JOSEPH H. THOMPSON
MIRANDA E. DUGI
Assistant United States Attorneys

Date: 10-14-21

MARK ALLEN MILLER
Defendant

Date: 10-14-21

ROBERT LENGELING
Counsel for Defendant

12